Carlos CESPEDES, Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner of New York State Department of Correctional Services; John P. Keane, Superintendent; Charles Greiner, Deputy Superintendent of Security; F. Orengo, Captain; John Doe, Captain; M. Stokes, Lieutenant; Sgt. Fields, Sergeant; SGT. Albelo, Sergeant; and J. Roman, Correctional Officer, Defendants.

No. 90 CIV. 2667 (DNE).

United States District Court, S.D. New York.

April 30, 1998.

Dianne L. Rosky, New York City, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, New York City (Michael Hueston, Assistant Attorney General, of counsel), for Defendants.

*Opinion & Order*

EDELSTEIN, Senior District Judge.

This is a civil rights action under 42 U.S.C. § 1983 in which Plaintiff, a prisoner at the Ossining Correctional Facility ("Sing Sing") alleges that his confinement in a special housing unit violated his due process rights. Currently before this Court are two separate motions. First, Plaintiff requests that this Court compel Defendants to disclose the identity of the confidential informant in this case. Second, Plaintiff petitions this Court to clarify two prior discovery Orders that are a subject of dispute between the parties.

*Background*

The facts of this case have been set forth in detail by this Court in a February 1997 Opinion, *see Cespedes v. Coughlin,* 956 F.Supp. 454 (S.D.N.Y.1997), and as such, only those facts necessary for resolving the instant motion will be discussed. In 1989, Plaintiff, Carlos Cespedes ("Cespedes"), an inmate at Sing Sing was charged with assault of another prisoner. Based in part on information provided by an informant to prison officials, Cespedes was found guilty of the assault at a prison disciplinary hearing, and was, *inter alia,* sentenced to one year of segregated confinement in Sing Sing's Special Housing Unit ("SHU"). Citing flaws in his disciplinary hearing, Cespedes successfully appealed his sentence. However, by then he had already served approximately 90 days in SHU confinement. Moreover, Cespedes spent approximately 14 additional days in SHU after his sentence was overturned bringing his total time in SHU confinement to 104 days.

Thereafter, in 1990, Cespedes filed the instant lawsuit against nine prison officials alleging violations of 42 U.S.C. § 1983 and several state law claims. Specifically, Cespedes alleged that he was subjected to 104 days in segregated housing as a result of a manifestly unfair prison disciplinary hearing that was conducted in violation of his Fourteenth Amendment due process rights.

On or about June 20, 1997, the parties submitted a joint motion requesting that this Court vacate a prior Order dismissing Cespedes § 1983 claims based on his SHU confinement. *See Memorandum of Law in Support of the Parties' Joint Motion for Relief from the Court's Order,* June 20, 1997. Additionally, the parties moved this Court for an order to reopen discovery to allow them to conduct discovery and create a factual record as to Plaintiff's disciplinary confinement. *See id.* at 6. Specifically, discovery was to focus on whether Plaintiff's confinement constituted an " 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *See id.* at 2 (citing *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). This Court granted the Joint Motion on July 22, 1997 and ordered the parties to jointly submit a discovery schedule no later than August 22, 1997. *See Cespedes v. Coughlin,* 969 F.Supp. 254 (S.D.N.Y.1997).

The parties stipulated to a discovery schedule on August 19, 1997. The discovery schedule mandated that discovery shall end on December 12, 1997. On December 9, 1997, this Court received a letter from Plaintiff's counsel requesting a 60 day extension on the discovery deadline.[1] (Letter from Dianne L. Rosky to Honorable David N. Edelstein of 12/9/97 ("Rosky letter of 12/9/97").) Along with the letter, Plaintiff's counsel, as per this Court's Individual Rules, submitted a proposed order in the form of a stipulation signed by both parties agreeing to the extension. Also enclosed with the letter, was another letter to this Court, dated November 17, 1997, that counsel had allegedly sent but went unreceived by this Court.[2] The November 17, 1997 letter set forth plaintiff's counsel's reasons for requesting the extension. First, counsel stated that although discovery was proceeding, more time was necessary because counsel, who was relatively new to this protracted litigation, was required to devote a substantial amount of the discovery time period just to become familiar

---

1. A copy of this letter was also sent to Defense counsel.

2. The letter, which this Court has no reason to doubt was sent, was the Plaintiff's original application for a 60 day extension for discovery deadline.

with the issues of this case. (Letter from Diane L. Rosky to Honorable David N. Edelstein of 11/17/97 at 1 attached to Rosky letter of 12/9/97.) Second, counsel was having difficulty regularly communicating with the Plaintiff, who was still incarcerated. *Id.* Finally, having received Defendants' response to her discovery requests on November 14, 1997, counsel determined that she needed additional time to conduct depositions of approximately 10 to 15 individuals. *Id.*

On December 10, 1997, this Court, finding that Plaintiff's counsel had set forth the necessary good cause for an extension of time as required by this Court's Individual Rules, *see* Rule 2(a), Honorable David N. Edelstein Individual Rules, Procedures and Forms, November 1997, signed the parties' stipulation extending the deadline of discovery to February 12, 1998. *See Cespedes v. Coughlin,* No. 90–2667, December 10, 1997.

On February 4, 1998, this Court received a letter from Plaintiff's counsel requesting another 60 day extension of the discovery deadline, along with a proposed order stipulated to by the parties. The letter stated that the parties jointly move for additional time to schedule 10 to 15 depositions of individuals who possess knowledge relevant to the outstanding issues in this action, but who have been difficult to locate. (Letter from Timothy E. Di Domenico to Honorable David N. Edelstein of 2/4/98 ("Di Domenico letter")).

Additionally, the letter stated that Plaintiff, who was under the impression that the December 10, 1997 extension covered all discovery, had served a first request for admissions on Defendants on January 27, 1998, but that Defendants had argued that Plaintiff's request was untimely and refused to file a response. *See id.* Without comment, this Court signed the stipulation extending the discovery cutoff date to April 13, 1998.

On April 6, 1998, Plaintiff's filed the instant motion. Plaintiff petitions this Court for an order compelling Defendants to divulge the identity of the confidential informant ("CI" or "informant") in this case as well as an order clarifying this Court's prior two extension Orders. *See* Di Domenico letter.

First, Plaintiff's counsel states that they requested the name and address of the CI on September 12, 1997, in Plaintiff's first set of interrogatories but, as of April 6, 1998, Defendants had failed to supply a response to the interrogatories. *Id.* at 1. Plaintiff's counsel argues that this information is necessary because it will enable them to interview or depose the CI, who they believe possesses information that is material to this case. *Id.* at 1–2. In order to address any confidentiality and security concerns raised by divulging the CI's identity, Plaintiff's counsel suggests that this Court prepare a carefully drafted protective order. *Id.* at 2.

Defendants contend that the identity of the CI must not be disclosed because it would jeopardize the life of the informant as well as undermine security at Sing Sing. (Letter from Michael O. Hueston to Honorable David N. Edelstein of 4/14/98 at 2.) Moreover, Defendants argue that the CI's testimony is not relevant to this case as the issue here is whether Plaintiff's confinement was an atypical and significant hardship of his course of confinement. *Id.*

As for the second issue, the discovery matter, Plaintiff argues that both extensions of the discovery deadlines, ordered by this Court on December 10, 1997 and February 6, 1998 respectively, applied to all forms of discovery. Therefore, according to Plaintiff, Defendants are obligated to respond to Plaintiff's first request for admissions filed on January 27, 1998 as it was a legitimate and timely request. In further support for Plaintiff's contention that Defendants are required to respond to Plaintiff's first request for admissions, Plaintiff states that Defendants will not be prejudiced if they have to respond and that judicial economy will be served. Additionally, Plaintiff argues that Defendants' failure to timely respond to the admissions request has resulted in a waiver, and as a result, the facts in the admissions request should be deemed admitted.

Defendants counter that the discovery extensions did not apply to all forms of discovery, but only to depositions and expert

discovery.[3] In support of their argument, Defendants note that the parties stipulated that they would serve all discovery requests by September 10, 1997. Therefore, according to Defendants, since Plaintiff's requests for admissions were discovery requests that were not made until four months after the discovery request deadline, they were untimely, and as such, did not require a response.

Defendants argue that this Court should not now interpret the extensions as pertaining to all forms of discovery because Plaintiff already had ample opportunity to obtain the information he seeks. Additionally, Defendants suggest that Plaintiff's requests seek information that is duplicative or readily obtainable from elsewhere, i.e. from documents Plaintiff already possesses. However, Defendants add that if this Court holds that the discovery extensions pertained to all forms of discovery, that this Court should deny Plaintiff's suggestion that Defendants have waived their right to respond to Plaintiff's admissions request, as a waiver would prejudice Defendants by forcing them to admit facts they dispute. Instead, Defendants request 30 days to respond.

For the reasons set forth below, both of Plaintiff's motions are denied.

### Discussion

■ Plaintiff argues that he should be permitted to know the name or the address of the CI in this case because the informant possesses information that is material to Plaintiff's case. Di Domenico letter at 1–2. However, Plaintiff cites no authority to support this proposition. He simply states that he is entitled to explore the CI's knowledge as to the matters in this case. *Id.* at 2. This Court is not convinced.

The possible consequences of revealing the identity of a CI could be disastrous. Indeed, not only could it place the CI's life in serious jeopardy, according to the Deputy Superintendent of Security for Sing Sing, it would seriously undermine the Department of Correctional Services' security function at the prison. *See* Letter from W. Connolly to Michael Hueston of 4/9/98 attached to Hueston letter as Exhibit C (stating that "divulging the identity of a confidential informant ... could and would be catastrophic to the safe and secure operation of the Department of Corrections"). Additionally, this Court is not satisfied that a carefully drafted protective order would address the confidentiality and security concerns that would surround such a divulgence of the CI's identity.

Moreover, since the issue here is whether Plaintiff's 104 day confinement was an atypical and significant hardship of his course of confinement, this Court is not persuaded that the CI's testimony would be material or even relevant to these proceedings.[4] Accordingly, this Court will not compel Defendants to divulge the identity of the CI.

■ This Court will now turn its attention to its prior extension Orders for the deadline of discovery. As stated, Plaintiff interpreted the extensions as pertaining to all discovery while Defendants understood the extensions to be solely for deposition and expert discovery. The stipulations are silent as to what the extensions entailed and thus are of no assistance. However, a look at the discovery schedule stipulated to by the parties shows that the extensions could have only pertained to depositions and expert discovery.

The discovery schedule stated that the parties would serve document discovery requests by September 10, 1997. This means that both parties had to have served their requests for interrogatories, documents and admissions by that date. An extension on the discovery deadline, which was set for December 12, 1997 by the parties, would not affect the September 10, 1997 deadline to file discovery requests. Therefore, any discov-

---

3. Defendants claim that they agreed to the extensions based on the condition that they only pertained to those matters.

4. Even if this Court were to hold that Plaintiff's confinement was an atypical and significant hardship of his course of confinement, that does not change the result here. In that case the question would be whether the hearing officer independently assessed the reliability of the CI, not whether the CI was telling the truth. Thus, again, the CI's role in Plaintiff's disciplinary hearing would not be relevant to this case.

ery request made after September 10, 1997 would be untimely.

Had Plaintiff required extra time to make a discovery request, he could have made a motion to this Court for permission. He did not. He cannot now claim that his requests for the first extension of the discovery deadline were an attempt to do so as neither of his submissions indicated that he was seeking an extension for the purpose of making a discovery request, or for that matter, even mentioned anything about serving another discovery request. Indeed, this Court approved the extension because Plaintiff needed time to respond to Defendants' discovery request and take depositions, not because he needed time to make another discovery request.

As for the second extension request, this Court granted it because, as the Plaintiff's letter indicated, the parties jointly sought the extension "to schedule depositions of the 10 to 15 individuals [who had] knowledge relevant to the outstanding issues of this action." Di Domenico letter at 1. Therefore, again, Plaintiff cannot claim that his second request for an extension of the discovery deadline was an application to make a discovery request. It is irrelevant that Plaintiff's belief was that the first extension included all forms of discovery, as this position is inconsistent with the facts and cannot be supported by the record. The stipulation that this Court so ordered on December 10, 1997 did not mandate that sort of extension, nor could it have had as neither of the Plaintiff's letters to this Court in search of the first extension requested an extension of that nature.

It would be inherently unfair for this Court now to interpret the stipulations to include something that they were never intended to include. Accordingly, this Court finds that the extensions granted by this Court applied only to depositions and expert discovery and not to all discovery.

## Conclusion

IT IS HEREBY ORDERED THAT Plaintiff's two motions are denied.

IT IS FURTHER ORDERED THAT the parties shall submit the Joint Pre-trial Order on or before June 1, 1998.

So Ordered.